395 P.2d 716

**PARADISE VALLEY WATER COMPANY, an Arizona corporation, Appellant,**

v.

**James G. HART Sr., James E. Lindsay, and James T. O'Neil, as Members of the Board of Supervisors of Maricopa County, State of Arizona, and Lincoln Road–36th Street Improvement District No. 1 of Maricopa County, Arizona, Appellees.**

No. 6912.

Supreme Court of Arizona.

In Division.

Oct. 15, 1964.

Ryley, Carlock & Ralston, Phoenix, for appellant.

Charles N. Ronan, County Atty., by Howland F. Hirst, Deputy County Atty., Maricopa County, for appellees.

UDALL, Chief Justice.

This is an appeal by the Paradise Valley Water Company, herein referred to as the water company, from a judgment of the lower court entered against it and in favor of the Board of Supervisors of Maricopa County and the Lincoln Road–36th

Street Improvement District No. 1 [1] herein referred to as the Board, county, or improvement district. The amount of the judgment was $4,671.00, which amount represents the cost of relocating some of the water company's lines which was necessitated by certain road improvements.

The water company is a domestic water utility company certificated by the Arizona Corporation Commission to supply domestic water service to the customers in the area generally known as Paradise Valley. The water company obtained a franchise from the Board to construct, maintain, and operate water lines, etc., for a period of 25 years along, upon, under and across the public highways, roads and alleys and thoroughfares within that portion of Maricopa County described in the franchise.

The franchise was granted to the water company on July 2, 1951. Pursuant to such franchise and in furtherance of its duties and obligations as a public service corporation, the water company installed certain mains under a dirt road known as Lincoln Road. Prior to the construction of such mains, the water company obtained a permit from the county and the mains were thereafter constructed in accordance with the specifications contained in said permit.

Several years later, in January of 1957, an improvement district was organized by the owners of the property on either side of the Lincoln Road under the provisions of Title 11, Chapter 5 of A.R.S. (1956) for the purpose of paving that portion of Lincoln Road. The plan of improvement and the subsequent contract let by improvement district did not provide for the cost of relocating the water company's lines made necessary by the road improvement.

On May 29, 1957, the Board passed a resolution requiring that whenever a utility operating under a franchise granted by the Board is required to relocate its facilities because of road improvements the utility shall bear the expense of such relocation. The county made a demand on the water company to relocate the lines and when the water company refused to do so, the lines were relocated by the county at an expense of $4,671.00. Thereafter the county and improvement district jointly commenced an action against the water company for a declaratory judgment to declare that the franchise granted by the Board to the water company required the company to remove and relocate its distribution system at the company's expense.

The matter was heard on motions for summary judgment. Since there was no question of fact, but purely a question of law, the court granted the motion of the county and the improvement district and

1. It should be noted that the members of the board of supervisors pursuant to the county improvement district statutes are the directors of the improvement district. A.R.S. § 11-708 (1956).

judgment was granted in their favor. The water company appealed from this judgment.

The sole issue to be determined here is whether a public utility must relocate its distribution facilities at its own expense in order that a county improvement district may improve the road under which the distribution facilities lie.

It is well settled that a public utility accepts franchise rights in public streets subject to an implied obligation to relocate its facilities therein at its own expense when necessary to make street improvements. New Orleans Gaslight Co. v. Drainage Commission of New Orleans, 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831 (1905); Southern California Gas Co. v. City of Los Angeles, 50 Cal.2d 713, 329 P.2d 289 (1958). See Southern California Gas Co., supra, and Rhyne, Municipal Law §§ 17–24 and 24–6 (1957) for an exhaustive list of authorities supporting this proposition.

In the present case this obligation of the utility was expressed. The franchise contained the following language:

"1. All rights hereunder are granted under the express condition that the Board of Supervisors of said Maricopa County shall have the power at any time to impose such restrictions and limitations and to make such regulations on such highways, roads, and thoroughfares as may be deemed best for the public safety, welfare and convenience."

A.R.S. § 40–283(B) (1956) states:

"A board of supervisors in granting a license or franchise, or at any time after it is granted, may impose restrictions and limitations upon the use of the public roads as it deems best for the public safety or welfare."

The Board on May 29, 1957 then passed a resolution which specifically required utility companies to bear the expense of moving their distribution systems when necessary to make road improvements.

The water company does not argue with the general rule that a city or county has the police power to require a utility to relocate its facilities at its own expense for road improvements made by the city or county, but says it does not apply to county improvement districts. They contend that the entity known as a county improvement district does not possess this police power. They argue that the improvement district is organized to solely benefit the inhabitants of the district and not the public generally. These contentions are without merit for several reasons. First, the statutes authorizing the creation of county improvement districts specifically provide that "the district shall be a body corporate *with the powers of a municipal corporation* for the purposes of carrying out the provisions of

this article." A.R.S. § 11–706(A) (1956). (Emphasis added.)

Secondly, the Board has the discretion in the first instance to create the improvement district. If they find "that the public convenience, necessity or welfare will be promoted by the establishment of the district" they shall create it. A.R.S. § 11–706(A) (1956). The petition for the creation of the improvement district shall set forth, *inter alia*, "(t)hat the public convenience, necessity or welfare will be promoted by the establishment of the district and that the property to be included therein will be benefited." A.R.S. § 11–703(C) (3) (1956). In addition, the board of supervisors of a county are the board of directors of the district. A.R.S. § 11–708 (1956).

Thirdly, the purposes for which the improvement districts may be formed are limited to those which "the public interest or convenience requires." A.R.S. § 11–709 (1956). This statute lists the many specific purposes for which public improvements may be undertaken which are generally concerned with street and sewer improvements and projects related thereto. By the very nature of such improvements they are not only of special benefit to the property owner in the district but are also of general benefit to the public throughout the county and the state.

■■ We therefore state that a county improvement district to make street improvements such as in this case is not a private enterprise or business association as the water company contends, but rather the county itself acting through an agency of its own creation. Since this is the case, the general rule stated earlier in this opinion that a public utility accepts franchise rights in public streets subject to an obligation to relocate its facilities therein at its own expense when necessary to make street improvements is applicable to this case. The argument that the county does not possess the necessary police power to require such relocation at the utility's expense, when the county elects to use the improvement district approach to financing the improvement of a public road, is unsound.

We therefore hold that a public utility must bear the expense of relocating its distribution facilities when necessary in order that a county improvement district may make street improvements.

Judgment affirmed.

BERNSTEIN and SCRUGGS, JJ., concur.